IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

RUFUS WEST, a/k/a MANSA LUTALO IYAPO,

                Plaintiff,

   v.

GREGORY GRAMS, *et al*,

                Defendants.

OPINION and ORDER

11-cv-687-slc
_____

In this case, plaintiff Mansa Lutalo Iyapo,[1] a Muslim inmate, brought claims that prison officials were: (1) violating his rights under the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA) by prohibiting Jumu'ah, Talim and Eid al-Fitr services to be held at the Columbia Correctional Institution without a volunteer leader from outside the prison; and (2) violating his rights under the First Amendment by retaliating against him for debating when it was proper to serve meals to Muslim inmates during Ramadan.

In a November 8, 2013 order, I granted defendants' motion for summary judgment on all of plaintiff's claims,[2] concluding that plaintiff failed to show that defendants had violated his rights and adding that in any event, defendants were entitled to summary judgment on each claim based on the doctrine of qualified immunity. Dkt. 102.

Now before the court are submissions from each side. Plaintiff has filed a document titled "Plaintiff's Objections/Reconsideration" raising several issues, which I construe as a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Defendants have

---

[1] Plaintiff asks to be referred to by his "spiritual name."

[2] In addition, I denied plaintiff's cross-motion for summary judgment.

added a letter pointing out that qualified immunity was not a proper basis for granting summary judgment on plaintiff's RLUIPA claims, which are for injunctive relief only. After considering these submissions, I will deny plaintiff's Rule 59 motion in all respects except for the court's application of qualified immunity to plaintiff's RLUIPA claims. I will vacate that portion of the judgment, but dismiss plaintiff's RLUIPA claims because he has been transferred to a new prison and I will direct the clerk of court to enter an amended judgment in favor of defendants.

OPINION

"To prevail on a Rule 59(e) motion, the moving party 'must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.'" *Edgewood Manor Apt. Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 770 (7th Cir. 2013) (quoting *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012)). Plaintiff does not point to any newly discovered evidence; rather, I understand him to be arguing that the court made several "manifest errors of law." In the Rule 59 context, a "manifest error" means "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). I will address each of plaintiff's claims separately below.

**I. Free Exercise Clause**

In the November 8, 2013 order, I discussed how this court has expressed uncertainty regarding the appropriate standard of review on free exercise claims, noting that "[t]he primary question is whether *Employment Division v. Smith*, 494 U.S. 872 (1990), or *Turner v. Safley*, 482

U.S. 78, 89–91 (1987), or both, control(s) the analysis." Dkt. 102 at 18.  Ultimately, I concluded that it was "unnecessary to choose one of these standards over the others" because it is well-established that prison officials may prohibit inmates from leading group religious services where they have articulated security concerns about allowing individual prisoners to exercise authority over the group.  *Id.* at 19-20.  In this case, defendants provided affidavits stating that Wisconsin prisons have had problems with gangs trying to take over religious groups and articulating their concern over disrupting the power dynamics of the prison and empowering gang leaders by allowing inmate-led services.

Plaintiff's primary argument against the dismissal of his Free Exercise claims is that he provided evidence suggesting that defendants' statements about the security concerns and past problems at the prison were untrue, and that I made inappropriate credibility determinations at the summary judgment stage by siding with defendants' concerns over plaintiff's evidence that these concerns were overblown.  Plaintiff overlooks the fact that I *did* note factual disputes between the parties regarding past problems, such as whether CCI inmates refused to cooperate with the prison's previous policy of allowing inmates to rotate leadership roles in group services, dkt. 102 at 6.  Plaintiff also overestimates the range of facts he placed in dispute; regarding whether there have any problems in the past, he stated in his declaration that he has never witnessed, "nor has there ever been," any abuse of the group services.  The court must credit factual assertions to which plaintiff had first-hand knowledge, but the court is not making an improper credibility determination when it ignores plaintiff's broad assertion that such abuses have *never* occurred at CCI or in Wisconsin's prisons as a whole, because this assertion clearly

3

is outside the scope of plaintiff's personal knowledge. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . .").

Moreover, plaintiff fails to grasp that this court, when considering a prison's restrictions on inmates' First Amendment rights, "must distinguish between inferences relating to disputed facts and those relating to disputed matters of professional judgment." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010) (quoting *Beard v. Banks*, 548 U.S. 521, 530 (2006)). Inferences regarding disputed matters of professional judgment are governed by *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003), which states that courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *See also Singer*, 593 F.3d at 534 (*Overton* "mandates deference to the views of prison authorities."). Plaintiff's bald assertions disputing defendants' concerns about gang influence and defendants' other security concerns over allowing individual inmates to lead group religious services do not suffice to overcome this deference. *See Singer*, 593 F.3d at 536 (banning the game "Dungeons and Dragons" did not violate First Amendment despite lack of evidence showing it incited gang behavior in the past, because it was rational to believe that continuing to allow inmates to play the game could lead to such behavior in the future).

Plaintiff also argues that I should not have considered the other ways Muslim inmates are allowed to practice their faith outside of group services, but the cases he cites for this proposition are RLUIPA cases, not Free Exercise cases. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987) ("Here, similarly, we think it appropriate to see whether under these regulations respondents retain the ability to participate in other Muslim religious ceremonies."); *Kaufman*

*v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005) (Plaintiff introduced no evidence showing he would be unable to practice atheism effectively without the benefit of a weekly study group; defendants allowed him to study atheist literature on his own, to consult informally with other atheist inmates, and to correspond with members of the atheist groups he identified; plaintiff offered nothing suggesting these alternatives were inadequate).

At any rate, plaintiff's arguments about the substance of his Free Exercise claims are somewhat beside the point because he fails to show manifest error with regard to this court's alternate ground for granting summary judgment, namely qualified immunity. I concluded that "precedent is on the defendants' side: there is no clearly established right to group worship led by an inmate." Dkt. 102 at 23 (citing *Kramer v. Pollard*, 497 F. App'x 639, 643 (7th Cir. 2012) ("permitting prison administrators to deny group worship where no volunteer or chaplain is readily available to lead services, a reasonable government official would not have known the official was violating clearly established law"); *Baranowski v. Hart*, 486 F.3d 112, 120–22 (5th Cir. 2007); *Spies v. Voinovich*, 173 F.3d 398, 402, 405–06 (6th Cir. 1999); *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988); *Hadi v. Horn*, 830 F.2d 779, 781, 784–85 (7th Cir. 1987).

Plaintiff raises a couple of barely developed arguments in an effort to argue that qualified immunity should not apply, including that (1) cases such as *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) show that prisons "must" provide Jumu'ah, Talim and Eid al-Fitr; and (2) he was discriminated against because Christian prisoners have a Christian chaplain and many available Christian volunteers. However, both of these propositions inaccurately state the law and they do nothing to counter the just-cited cases showing that there is *not* a clearly established right to

group worship led by an inmate.[3] *See O'Lone*, 482 U.S. at 350-53 (prison allowed to restrict access to Jumu'ah where policies furthered institutional order and security and rehabilitative concerns); *Al–Alamin v. Gramley*, 926 F.2d 680, 687 (7th Cir. 1991) (rejecting argument that prison was required to hire imam if it employed a Christian chaplain). Accordingly, I will deny plaintiff's Rule 59 motion as it pertains to his Free Exercise claims.

## II. RLUIPA

In ruling on plaintiff's RLUIPA claims regarding Jumu'ah, Talim and Eid al-Fitr services, I stated in relevant part:

> The protections offered by RLUIPA are broader than those extended under the Free Exercise Clause. *Cf. Mark v. Gustafson*, 482 F.Supp. 2d 1084, 1090 (W.D. Wis. 2006) (if a claim fails under RLUIPA, then it will inevitably fail under the First Amendment's more stringent requirements on a plaintiff). The broader scope of RLUIPA, coupled with the dearth of precedent regarding RLUIPA's application to the prohibition on inmates leading group services, makes it more difficult to determine whether plaintiff's claim might succeed on the merits. It is arguable whether plaintiff's rights were *substantially* burdened by the requirement that outside volunteers lead group services, where the evidence shows that Jumu'ah and Talim were held *less often* than he wished and that the Eid al-Fitr feast was held *later* than normal. . . .
>
> In any case, the lack of clear precedent on this issue supports defendants' claim of qualified immunity. As stated above regarding plaintiff's Free Exercise claims, there is no basis to conclude that prison officials violated a "clearly established right"

---

[3] Given the tortuous organization of plaintiff's motion, it is possible that he means to raise these arguments as challenges to my decision on the substance of his Free Exercise claim as opposed to the qualified immunity question. However, neither of plaintiff's incorrect premises points to any manifest error in my previous Free Exercise analysis, so I need not consider them.

> by requiring group religious services to be led by an outside volunteer, particularly when this effects of this rule arguably did not cause a substantial burden on the ability of Muslim inmates to exercise their religion.

Dkt. 102 at 23-25.

However, as both plaintiff's Rule 59 motion and defendants' letter point out, qualified immunity is not a defense to claims for injunctive relief, which is the sole remedy plaintiff may recover on his RLUIPA claims.[4] *See e.g.*, *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 758 (7th Cir. 2012) ("Hannemann is correct; the defense of qualified immunity does not protect defendants from an action for injunctive relief.")). Duly noted. Because I should not have granted summary judgment to defendants on the ground of qualified immunity, I will grant plaintiff's Rule 59 motion regarding his RLUIPA claims and I hereby vacate the judgment as it pertains to these claims.

Nevertheless, plaintiff is not entitled to a trial on his RLUIPA claims because these claims now are moot. Plaintiff informs the court that he is no longer at the Columbia Correctional Institution; he has been transferred to the Green Bay Correctional Institution. If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless "he can demonstrate that he is *likely* to be retransferred." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. Ind. 1996) (quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)) (emphasis added). "Mere speculation" is insufficient to meet this standard, *Higgason*, 83 F.3d at 811 (citing *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975), and there is no reason to think

---

[4] The RLUIPA does not allow claims for damages. *Vinning-El v. Sutton*, 657 F.3d 591, 592 (7th Cir. 2011).

that either plaintiff, the court or even defendant prison officials are capable of providing anything at this point other than speculation about plaintiff's future prison assignments. Accordingly, I will dismiss these claims as moot. Of course, if in short order plaintiff finds himself back at CCI and encounters the same difficulties in attending the group services at issue in this case, he could seek leave of the court to reopen his claims for injunctive relief.

## III. Retaliation

That leaves plaintiff's retaliation claim—that defendants Teslik, Lipinski and Bennett violated plaintiff's First Amendment rights by serving Ramadan meals as late as possible after plaintiff debated with Teslik about when to properly serve those meals. To state a claim for retaliation, a plaintiff must identify: (1) the constitutionally protected activity in which he was engaged; (2) one or more retaliatory actions taken by each defendant that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) sufficient facts to make it plausible to infer that the plaintiff's protected activity was one of the reasons defendants took the action they did against him. *Bridges v. Gilbert*, 557 F.3d 541, 556 (7th Cir. 2009). I concluded that "the alleged retaliation would *not* likely deter a person of ordinary firmness from continuing to engage in protected activity." Dkt. 102 at 27.

Plaintiff argues that this ruling "trivialized the adverse effects the . . . retaliatory conduct has had on" him personally, as evidenced by his proposed finding of fact stating that he asked to withdraw his complaint about meal delays after Teslik set the new meal time at 8:30 p.m. in response to the complaint. But when determining retaliation, the court applies an objective test, not a subjective test, to determine whether the alleged retaliatory actions would deter a person

of "ordinary firmness" from engaging in the protected activity—in this case, debating with defendant Teslik about when to properly serve the Ramadan meals. *E.g.*, *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011) ("We apply an objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity."); *Cockroft v. Moore*, 638 F. Supp. 2d 1024, 1031 (W.D. Wis. 2009) ("This is an objective standard, viewed from the perspective of a person of 'ordinary firmness.'"). I have already ruled that "[t]he meager case law that exists and common sense both suggest" that no reasonable jury could find a sufficient objective deterrent effect regarding the meal delays, and plaintiff does not present any argument addressing this proper objective standard. Thus, plaintiff has failed to persuade me that the court was incorrect in granting summary judgment to defendants on the substance of his retaliation claim.

As with plaintiff's other claims, I previously had concluded that defendants also would prevail on the retaliation claim on qualified immunity grounds. Plaintiff raises a fairly persuasive argument that qualified immunity should *not* be available for defendants because the Seventh Circuit has stated that

> Retaliation against constitutionally protected conduct is actionable regardless of whether the defendant's actions independently violate the constitution. A prison official in [the defendant's] position therefore would have been on notice that *any* retaliation, whatever its shape, could give rise to liability.

*Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996).

*But see Lindell v. O'Donnell*, 05-C-04-C, 2005 WL 2740999 at *31 (W.D. Wis. Oct. 21, 2005) (granting summary judgment on ground of qualified immunity on claim by prison inmate that prison officials retaliated against him for threatening to file lawsuit, as opposed to actually filing

lawsuit, because there was no clearly established constitutional right to threaten to file lawsuit). However, I need not address the issue of qualified immunity further because I have already concluded that defendants are entitled to summary judgment on the substance of plaintiff's retaliation claim.

## ORDER

It is ORDERED that:

(1) Plaintiff Mansa Lutalo Iyapo's motion to alter or amend the November 8, 2013 judgment, dkt. 105, is GRANTED IN PART. The judgment is VACATED with respect to the granting summary judgment to defendants on his claims for injunctive relief under the Religious Land Use and Institutionalized Persons Act. Plaintiff's motion is DENIED in all other respects.

(2) Plaintiff's RLUIPA claims for injunctive relief are DISMISSED as moot.

(3) The clerk of court is directed to enter an amended judgment reflecting this opinion and order.

Entered this 16th day of June, 2014.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge